UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ADEKUNLE LONGE

                             Plaintiff,          FIRST AMENDED COMPLAINT

            - against -

                                              1:16-cv-05705

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, JOHN CHELL          PLAINTIFF DEMANDS A TRIAL
                                                                    JURY

                             Defendants.
-------------------------------------------------------------------X

## COMPLAINT

Plaintiff, ADEKUNLE LONGE, through undersigned counsel, sues Defendants, THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT; and JOHN CHELL and alleges the following upon information and belief:

The original complaint was filed in this Court on July 18, 2016. On August 29, 2016, Defendants requested and were granted an enlargement of time to respond to such complaint until November 1, 2016. As such, no responsive pleading has yet been interposed and Plaintiff hereby amends the complaint as a Matter of Course pursuant to Federal Rules of Civil Procedure §15(a)(1)(B).

## NATURE OF THE ACTION

1. Adekunle Longe ("Officer Longe" or "Plaintiff") is a black male. This action is on behalf of Plaintiff for declaratory and injunctive relief and monetary damages to redress the injuries Officer Longe has suffered as a result of being discriminated against by Defendant(s) on the basis of race, color, and national origin under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, New York State Executive Law § 296 and the New York City Administrative Code §8-107. This action further seeks relief for retaliation against Officer Longe and a hostile work

1

environment created by Defendants after he filed a complaint with the Equal Employment Opportunity Commission in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, New York State Executive Law § 296 and the New York City Administrative Code §8-107.of The Complaint states causes of action under federal, state, and city law for deprivations of civil rights.

## JURISDICTION AND VENUE

2. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343 on the ground that this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et* seq. Plaintiff invokes this Court's pendant jurisdiction with respect to his claims based on the common law of New York, and New York Executive Law, Article 15. Plaintiff invokes this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3. The venue of this action is properly placed in the Southern District of New York pursuant to U.S.C. § 1391 because the plaintiff's claims arise within this district.

4. Plaintiff invokes the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a).

## CONDITION PRECEDENT

5. Plaintiff has performed all conditions precedent to the filing of this action, including the timely filing of a Complaint with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 520-2015-02304, received by the EEOC on May 1, 2015 and acknowledged thereby on or about June 3, 2015 and the filing of this action within 90 days of the Notice of Right to Sue, attached hereto as Exhibit A.

6. Plaintiff timely filed a second Complaint with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 520-2016-02381 and was granted a right to sue on

2

September 7, 2016 and has amended this complaint within 90 days of such Notice of Right to Sue, attached hereto as Exhibit "B".

7. This action is timely filed within three years of the events described herein.

## PARTIES

8. Plaintiff is a resident of the State of New York and resides at 12 Govan Drive, Stony Point, New York 10980.

9. At all times material herein, defendant THE CITY OF NEW YORK ("CITY OF NEW YORK"), was and still is a duly incorporated municipality of the State of New York, County of New York, whose seat of governance was and still is located at 250 Broadway, New York, New York 10007, who employs more than 50 (fifty) employees an exists under the laws of the state of New York.

10. At all times material herein, the NEW YORK CITY POLICE DEPARTMENT ("NYPD") is the municipal police force for the CITY OF NEW YORK with their principal place of business located at One Police Plaza, New York, New York 10007, employs more than 50 (fifty) employees an exists under the laws of the state of New York.

11. At all times material herein, JOHN CHELL, was a Captain with the NYPD who had supervisory responsibility over the Plaintiff.

## MATERIAL FACTS

12. At all times material herein, Plaintiff was a Patrol Officer with the New York City Police Department.

13. At all times material herein, Plaintiff was an African-American male.

14. At all times material herein, Plaintiff was a black male.

3

15. At all times material herein, Plaintiff spoke with a Nigerian accent and was regarded as being Nigerian by Defendants.

16. In or about January 2004, Plaintiff was hired by the Defendants City of New York and NYPD as a Patrol Officer.

17. Plaintiff has remained continuously employed with Defendants through the present.

18. In this position, Plaintiff performed his duties in a consistently exemplary manner that is reflected in the employer's assessments of his work performance.

19. Plaintiff has had one discourtesy in his file that he satisfied a penalty for in 2010 and had no further discourtesies through the events described herein.

20. In 2011, Plaintiff took the civil service examination, Examination Number 1533 000 for promotion to Sergeant and successfully passed the examination.

21. On or about May 17, 2012, Plaintiff received Notice of Result and was assigned list number 502.

22. Plaintiff's list number was called first in January 2013.

23. Approximately one month prior to his number being called, Plaintiff had been transferred from a precinct in Manhattan to a precinct in Brooklyn and he began to work under JOHN CHELL.

24. In accordance with the call of his list number, Plaintiff went to meet with the Board that oversees promotions in or about January 2013.

25. At such meeting, members of the Board informed Plaintiff that he should return in one year so that his current supervisors in the Brooklyn precinct could evaluate his performance.

26. Plaintiff returned the following year at which time he was informed that his supervisor, JOHN CHELL (hereinafter "CAPTAIN CHELL") did not feel Plaintiff was motivated enough and was told to return in six months.

27. "Lack of motivation" is a term without objective criteria and was a pretext for race, color, and national origin discrimination.

28. Following this meeting, Plaintiff sought to speak with CAPTAIN CHELL to inquire how he could improve CAPTAIN CHELL's opinion of him.

29. CAPTAIN CHELL is a white male.

30. Plaintiff inquired of CAPTAIN CHELL in or about February 2014 what he could do to demonstrate his motivation.

31. CAPTAIN CHELL told Plaintiff that he should be taking out the garbage.

32. It is not within the official duties of a Patrol Officer to perform janitorial functions.

33. No white officers seeking promotion to Sergeant were required to take out garbage before being promoted.

34. Following this meeting with CAPTAIN CHELL, Plaintiff was assigned to "cell attendant" duties by CAPTAIN CHELL.

35. "Cell attendant" duties are where Patrol Officers monitor detained persons at the precinct. In the course of such duties, a Patrol Officer so assigned cannot make arrests as they would if they were not assigned to cell attendant duties.

36. This assignment necessarily impacted Plaintiff's arrest numbers as his duties were restricted to inside the precinct.

37. Plaintiff returned six months later in July 2014 to meet with the Board a third time.

38. At such meeting, the Board members referenced that Plaintiff had low arrest numbers in the preceding six months.

39. The Board members further informed Plaintiff that he had twice been written up for being late to roll call. He had not been informed of these infractions when they purportedly occurred.

40. When Plaintiff looked over the times these infractions were reported, each such day was on a day he was approved to be off.

41. Plaintiff was also written up for returning to the precinct from as assignment and not immediately checking in at the front desk. He was with another officer who similarly did not check in immediately. The other officer, a white male, was not written up.

42. On July 24, 2014, Plaintiff received notice that he was not selected for the available vacancies.

43. After three meetings with the Board, an applicant is ineligible for promotion with the civil service class that he or she had passed.

44. Each year, Patrol Officers are reviewed and evaluated for performance and a composite score is issued on a scale of 0-5.

45. Plaintiff's scores most often ranged high, between a composite score of 4 to 4.5,

46. A composite score of 3.5 is to date the lowest evaluation composite that Plaintiff has received.

47. The 3.5 composite score occurred in Plaintiff's evaluation immediately prior to his final denial for promotion and covered the period of December 16, 2013 through July 27, 2014. The overall rater's comments with which the overall reviewer concurred were that "PO Longe is respectful and is well like by his peers. He has been motivated in performance of his duties in the past three months."

48. Upon information and belief, CAPTAIN CHELL, instructed the reviewers to lower the score of Plaintiff's evaluation.

49. The assigned reviewer and rater for this evaluation, supported Plaintiff's promotion but informed him that CAPTAIN CHELL had instructed the score to be lowered.

50. Upon information and belief, many of the applicants for Sergeant in Plaintiff's class and many officers currently holding the position of Sergeant have had discourtesies or greater infractions in their employment history.

51. The events detailed above caused Plaintiff to not receive a promotion for which he was qualified, to not receive the attendant responsibilities, income, and privileges associated with such promotion, and caused Plaintiff emotional distress and anguish and a reasonable fear that these events would reoccur in the future.

52. Officer Longe put the City of New York, New York City Police Department, and John Cell on notice of his complaints of discrimination on February 12, 2015 via letter from counsel.

53. Officer Longe's complaints were acknowledged by Executive Agency Counsel Stephanie Zimberg, Esq., via letter.

54. The complaints of Officer Longe detailed the facts and circumstances upon which his promotion was denied and complained of violations of Federal, State, and City laws.

55. On or about May 1, 2015, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging discrimination under federal and state law alleging discrimination on the basis of race, color, and National Origin.

56. After receipt of his complaints by agency counsel, Officer Longe was called into the internal equal employment opportunity office of the NYPD to investigate his complaint.

57. After asserting his complaints, Officer Longe became subjected to excessive scrutiny that he had not previously been subjected to.

58. To wit: On April 26, 2015, Officer Longe's tour began at 3:00 pm.

59. There was an accident with injury call that occurred at 2:18 pm.

60. An emergency medical services unit was dispatched to the site at 2:30 pm, arrived on the scene at 2:25 pm, and transported the patient to the hospital at 2:57 pm.

61. A day tour unit was assigned to such job but did not respond promptly. The day tour unit finished their duties at 3:35 pm. That unit was not penalized for failure to promptly respond.

62. Officer Longe's unit was assigned the above accident with injury job at 3:50 pm which was announced as "investigate an accident at location."

63. Officer Longe's unit was delayed in arriving as the assigned vehicle was being used by another unit and no car was available until a supervisor instructed them to take his vehicle number 4950.

64. Office Longe's unit then responded to four additional jobs including two accidents, a crime in progress, and finally defective traffic lights, before being stopped by Brooklyn South Investigators.

65. Investigators lodged two complaints with Officer Longe's unit, the first being that the unit failed to notify central that they were responding with a delay and the second that the unit did not egress the vehicle to observe the traffic lights.

66. Officer Longe's unit was required to investigate the status of the car from the previous tour as those assigned failed to mark the job before proceeding to such job. Officer Longe's unit investigated and properly marked the job. The earlier unit was not penalized and Officer Longe's unit was penalized.

67. Officer Longe's unit arrived to the site of the earlier job at 4:23 pm and marked it at 4:28 as an unnecessary job as the person had been transported to the hospital before Officer Longe's patrol began.

68. While at the site of the traffic lights, the unit moved in the vehicle around the intersection to view the lights and some members exited the vehicle to view the traffic lights; nonetheless, Officer Longe's tour was written up for idling and failure to get out of the vehicle to observe the lights. Even had no one gotten out of the vehicle to observe the lights, there is no rule requiring an Officer to observe the lights from outside of his vehicle.

69. The surveillance Officer Longe's tour was subjected to on this date was unprecedented prior to Officer Longe's filing notice of his complaints of discrimination.

70. Upon information and belief, no other unit has had their response to investigating defective traffic lights be scrutinized as to whether officers exited the vehicle to observe the traffic lights.

71. A penalty has not yet been assessed but charges and specifications for the above described incidents were signed on September 2, 2015.

72. In addition to the above described events, following Officer Longe's complaint, Lieutenants would continually call into central command to inquire about Officer Longe's activities for the day. No other Patrol officer was subjected to this type of surveillance.

73. This excessive scrutiny began after Officer Longe engaged in a protected activity by complaining about violations of his civil rights pursuant to Federal, State, and City law and was part and parcel of his filing complaints of discrimination.

74. As a result of the allegations and charges against Officer Longe, he has been placed on performance monitoring which will not expire until 2/4/2017. No other officer from his unit was placed on performance monitoring.

75. This unwarranted performance monitoring pervades Officer Longe's daily work activities.

76. The surveillance of Officer Longe, the charges and specifications, and the New York Police Department's continued attempts to exact forfeitures of privileges against Officer Longe are intended to harass Officer Longe and create a hostile work environment.

## COUNT 1
## DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

77. Plaintiff repeats and re-alleges paragraph 1-50 fully as if said paragraphs were fully set forth herein at length.

78. The City of New York, the NYPD, among others, have discriminated against Plaintiff on the basis of his race, color, and national origin in violation of Title VII by denying him the same terms and conditions of employment available to employees who are not African-American and/or black and/or Nigerian, including but not limited to, subjecting him to disparate working conditions, denying him an opportunity to work in an employment setting free of unlawful discrimination, and in failing to promote him for Sergeant despite his qualifications and the availability of open positions.

79. Under the Civil Rights Act of 1964, § 701 et seq., 42 USCA § 2000 et seq., it shall be an unlawful employment practice for an employer:

    a. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, creed, religion, sex, or national origin; or

    b. to limit, segregate, or classify his/her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's race, color, religion, sex, or national origin.

80. Defendants City of New York and NYPD impose for police officers seeking promotion to Sergeant, a civil service examination.

81. If a candidate is successful in such examination, they are assigned a list number for meeting with the Board in charge of promotions.

82. The Board then review's the candidate's record and evaluations.

83. Plaintiff successfully passed the civil service examination and was given a list number.

84. Plaintiff had consistently positive performance evaluations from his supervisors.

85. CAPTAIN CHELL's treatment of Plaintiff in instructing the Sergeants to lower his evaluation, asserting that Plaintiff was "not motivated enough" without further specification, and in telling Officer Longe he should be taking out the garbage resulted in Officer Longe being denied a promotion he was qualified for and the position remained open. Such vague terminology is a pretextual excuse. CAPTAIN CHELL's animus towards Plaintiff is motivated by race, color, and/or national origin. Similarly situated white officers were not exposed to the same treatment.

86. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his race in violation of The Civil Rights Act of 1964.

87. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his color in violation of The Civil Rights Act of 1964.

88. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his national origin in violation of The Civil Rights Act of 1964.

## COUNT II
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

89. Plaintiff repeats and re-alleges paragraphs 1-60 fully as if said paragraphs were fully set forth herein at length.

90. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his race, in violation of 42 U.S.C § 1981 *et seq.*

91. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his color, in violation of 42 U.S.C § 1981 *et seq.*

92. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his national origin, in violation of 42 U.S.C § 1981 *et seq.*

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

93. Plaintiff repeats and re-alleges paragraphs 1-92 as if said paragraphs were fully set forth herein at length.

94. In violation of 42 U.S.C. §2000e-3, Defendants have taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's actions as described in paragraphs 52, 54, and 56 above.

95. Plaintiff's actions as described in paragraphs 52, 54, and 56 above were within his rights as an employee of Defendant, and the resulting excessive scrutiny and charges and specifications therefore constitute unlawful employment practice.

96. Plaintiff has been damaged by virtue of Defendants' conduct alleged in the foregoing and is entitled to recover these damages from the appropriate defendants.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW §296

97. Plaintiff repeats and re-alleges Paragraphs 1-67 fully as if said paragraphs were fully set forth herein at length.

98. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his race, in violation of New York State Executive Law § 296 *et seq.*

99. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his color, in violation of New York State Executive Law § 296 *et seq.*

100. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his national origin, in violation of New York State Executive Law § 296 *et seq.*

### COUNT V
### RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW §296

101. Plaintiff repeats and re-alleges paragraphs 1-100 as if set paragraphs were fully set forth herein at length.

102. In violation of New York State Executive Law §296 et. seq., Defendants have taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's actions as described in paragraphs 52, 54, and 56 above.

103. Plaintiff's actions as described in paragraphs 52, 54, and 56 above were within his rights as an employee of Defendant, and the resulting excessive scrutiny and charges and specifications therefore constitute unlawful employment practice.

104. Plaintiff has been damaged by virtue of Defendants' conduct alleged in the foregoing and is entitled to recover these damages from the appropriate defendants.

## COUNT VI
## DISCRIMINATION IN VIOLATON OF THE NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. ADMIN CODE §8-107 et seq.

105. Plaintiff repeats and re-alleges paragraphs 1-71 fully as if said paragraphs were fully set forth herein at length.

106. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his race, in violation of New York City Administrative Code § 8-107 *et seq*.

107. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his color, in violation of New York City Administrative Code § 8-107 *et seq*.

108. All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of his national origin, in violation of New York City Administrative Code § 8-107 *et seq*.

## COUNT VII
## RETALIATION IN VIOLATON OF THE NEW YORK CITY HUMAN RIGHTS LAW, N.Y.C. ADMIN CODE §8-107 et seq.

109. Plaintiff repeats and re-alleges paragraphs 1-108 as if set paragraphs were fully set forth herein at length.

110. In violation of New York State Executive Law §296 et. seq., Defendants have taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's actions as described in paragraphs 52, 54, and 56 above.

111.    Plaintiff's actions as described in paragraphs 52, 54, and 56 above were within his rights as an employee of Defendant, and the resulting excessive scrutiny and charges and specifications therefore constitute unlawful employment practice.

112.    Plaintiff has been damaged by virtue of Defendants' conduct alleged in the foregoing and is entitled to recover these damages from the appropriate defendants.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:    October 28, 2016
          New York, New York

Respectfully submitted,

THE JACOB D. FUCHSBERG LAW FIRM

By: _____
Allyson L. Stein, Esq.
a.stein@fuchsberg.com
Attorneys for Plaintiff
Office and Post Office Address
500 Fifth Avenue, 45th Floor
New York, New York 10010
(212) 869-3599